39 C.C.P.A.(Patents)

**ELDER MFG. CO. v. INTERNATIONAL SHOE CO.**

**Patent Appeal No. 5834.**

United States Court of Customs and Patent Appeals.

Jan. 29, 1952.

Alfred W. Petchaft, St. Louis, Mo. (Lloyd W. Patch, Washington, D. C., of counsel), for appellant.

Lawrence C. Kingsland, Edmund C. Rogers, and Estill E. Ezell, all of St. Louis, Mo. (Kingsland, Rogers & Ezell, St. Louis, Mo., of counsel), for appellee.

Before JACKSON, Acting Chief Judge, and O'CONNELL, JOHNSON and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 86 U.S.P.Q. 269, reversing the decision of the Examiner of Interferences sustaining the notice of opposition of appellant, and holding that appellee was entitled to the registration of the notation "Sundial Mark Twain" as a trade-mark for use on boots and shoes of leather, fabric and/or combination thereof under section 5 of the Trade-Mark Act of February 20, 1905, 33 Stat. 725, 15 U.S.C. § 85,[1] now 15 U.S.C.A. § 1052.

In its application for registration, filed March 6, 1947, appellee alleged that it is the owner of registration No. 154,493, for the words "Mark Twain," and registrations Nos. 183,416, 220,337, 295,329, 319,419, and 301,249, each containing the word "Sundial"; that its trade-mark has been continuously used and applied to goods in its business since February 20, 1947; that the word "Sundial" has been used by it since

---

1. Sec. 6, Trade-Mark Act of 1905, 33 Stat. 726, 15 U.S.C. § 86, now 15 U.S.C.A. § 1063, provides: "* * * Any person who believes he would be damaged by the registration of a mark may oppose the same by filing notice of opposition, stating the grounds therefor, in the Patent Office within thirty days after the publication of the mark sought to be registered, * * *."

July 31, 1923, and the word "Mark Twain" (through predecessor) has been used since January 1, 1921; and, that its trade-mark is applied or affixed to the goods, or to the packages containing the goods, by imprinting the mark directly on the goods, on the containers, and in divers other ways.

In its notice of opposition, dated November 5, 1947, appellant alleges prior use of the trade-mark "Mark Twain" for use on men's and boys' collars and shirts; that it is the owner of two registrations of the trade-mark "Mark Twain" under the Trade-Mark Act of February 20, 1905, one being registration No. 363,478, registered by appellant on December 27, 1938, the other being registration No. 168,075, registered May 15, 1923, by Hall, Hartwell & Co. on an application filed January 24, 1922; that registration No. 168,075 was properly assigned by Hall, Hartwell & Co. to appellant on November 20, 1937; that the goods of the parties possess the same descriptive properties; that the marks are confusingly similar; and that appellant will suffer damages and injury by the registration sought herein.

Appellant also alleged that about the year 1883 its predecessor, Miller and Bingham Company, with permission of Samuel L. Clemens, did adopt the name "Mark Twain" as a trade-mark for men's and boys' collars, shirts and wearing apparel manufactured and sold by it; that Miller and Bingham Company assigned its business, good will and trade-mark rights, including the trade-mark "Mark Twain," to Hall, Hartwell & Co., which latter company assigned its trade-mark "Mark Twain" along with its manufacturing business to appellant; that appellant's predecessors and appellant, in unbroken succession since 1883 up to the present time, used the trade-mark "Mark Twain" upon their men's and boys' wearing apparel.

The examiner was of the opinion that the evidence established that Hall, Hartwell & Co. had continuously used the name "Mark Twain" as a trade-mark for collars from about the year 1907 until January 12, 1923, when the entire assets thereof were taken over by the corporation Hall, Hartwell & Co., Inc.; that the corporation continued use of the name "Mark Twain" for collars, and also used it for shirts until November 20, 1937, when title to the trade-mark "Mark Twain," and the business and good will associated therewith, was transferred to appellant; and that appellant has made continuous use of the mark since that time. Accordingly, he found that appellant had established use prior to January 1, 1921, the date of first use claimed by appellee, and, in view of this, he sustained the notice of opposition.

Registration No. 363,478 was registered long after use of appellee's mark and was not considered by the commissioner. Registration No. 168,075 was registered May 15, 1923, by appellant's predecessor Hall, Hartwell & Co. on an application filed January 24, 1922. In that application, which was sworn to by Joseph McKay, a member of the firm, it was stated that "The trade-mark has been continuously used in our business since about October 1, 1921." The mark was in continuous use by predecessors of appellant until it was assigned, on November 20, 1937, to the appellant who has used it continuously since then.

The commissioner found that appellee has proven use of its trade-mark "Mark Twain" at least as early as January 1, 1921, and that appellant has not proven use of its trade-mark "Mark Twain" prior to October 1, 1921. Accordingly, he held that the notice of opposition must be dismissed in view of appellant's failure of proof of prior use, and he reversed the decision of the examiner.

Counsel for appellant, in his brief and in the oral argument before us, declares that the issues involved are as follows:

"The Hon. Assistant Commissioner erred in giving Appellee benefit of early use by Bluff City Shoe Company in view of the fact that no good-will survived the liquidation and the belated assignment to Appellee for $50.00 was a mere *assignment-in-gross;* thus Appellee's first properly established use of the notation 'Mark Twain' on shoes dates from the year 1926. [Italics quoted.]

"The Hon. Assistant Commissioner of Patents erred in accepting Appellee's oral testimony as to early use by Appellee's

predecessor and at same time refusing to accept weightier and fully corroborated testimony showing antecedent adoption and use by Appellant's predecessor."

Registration No. 154,493 of the trade-mark "Mark Twain" was issued to appellee's predecessor, The Bluff City Shoe Company, on its application filed July 21, 1921. In the application for registration, which was sworn to by W. C. Logan, secretary and treasurer of The Bluff City Shoe Company, it is stated that the mark sought to be registered had been continuously used since January 1, 1921. In 1926 this registration was assigned to appellee.

The testimony discloses that the owners of The Bluff City Shoe Company decided to liquidate the assets of its business and that the real estate, certain lasts, dies, patterns and machinery were sold to appellee on July 16, 1925; that, at the time of this sale, The Bluff City Shoe Company had a substantial supply of shoes on hand and proceeded to sell them, the sale of the shoes on hand requiring a period of about one year; that on December 9, 1925, which was about five months after the sale of the real estate, machinery, etc., The Bluff City Shoe Company sold the trade-mark "Mark Twain" to appellee, the assignment of the trade-mark stating: " * * * the said Bluff City Shoe Company has sold, assigned and transferred, and by these presents does hereby sell, assign and transfer unto the said International Shoe Company (of Delaware) all its rights to, in and under said trade-mark, and to the goodwill of the business pertaining thereto, and in, to and under the registration issued for said trade mark (and the assignment thereof), for its own use and behoof, and that of its successors and assigns, as fully and entirely as the same would have been held and enjoyed by said Bluff City Shoe Company had this assignment and sale not been made."

Appellant contends that the above-mentioned assignment was a "mere assignment-in-gross"; that no good will survived the liquidation of The Bluff City Shoe Company; and that, consequently, appellee is not entitled to the benefit of the early use by The Bluff City Shoe Company.

We have carefully considered all the testimony relating to the use of the trade-mark by The Bluff City Shoe Company, the liquidation of the assets of the company, including the sale of the stock of shoes on hand at the time of the sale of the real estate and machinery, and are of the opinion that the sale and assignment of the certificate of registration and the trade-mark "Mark Twain" to appellee was not a mere "assignment-in-gross" but was rather a sale and assignment of a valid trade-mark which had not been abandoned.

Appellee's first use of the involved mark on its own merchandise was in 1925. The Bluff City Shoe Company, appellee's predecessor, registered this mark on April 18, 1922, registration No. 154,493. January 1, 1921, was the date of first use set out in the application for this registration. Registration No. 154,493 was assigned to appellee in 1925 by The Bluff City Shoe Company, but it was inadvertently permitted to expire without renewal thereof at the end of its term. Therefore, it, in itself, is not evidence of use either as of the date of registration or application, or as of the date of first use alleged therein.

The examiner and the commissioner held that appellee's predecessor, The Bluff City Shoe Company, first used the trade-mark "Mark Twain" on shoes as early as January 1, 1921. We agree with that holding as there is ample evidence to support it.

Appellee presented two witnesses who were employed by The Bluff City Shoe Company and who occupied responsible positions. One was a member of the board of directors and was in charge of sales; the other was a salesman during the entire period of time in question. The testimony of these witnesses is clear and specific and we deem it sufficient to establish use of the trade-mark "Mark Twain" by The Bluff City Shoe Company as early as January 1, 1921.

The examiner and the commissioner held that the question of priority depends upon whether or not appellant has established

any date of use by its predecessor Hall, Hartwell & Co. prior to January 1, 1921. It was the opinion of the examiner that appellant had satisfactorily established use by its predecessor Hall, Hartwell & Co. since "long prior to January 21, 1921," and he sustained the notice of opposition. The commissioner, however, was of the opinion the appellant failed to establish such prior use by clear and convincing evidence, and, for that reason, he reversed the decision of the examiner.

Appellant is not bound by the date of first use alleged in his application for registration No. 168,075. He is entitled to carry the date of first use back to a prior date by proper evidence. However, where one has alleged in his application for a trade-mark a date of earliest use and subsequently by proof attempts to show an earlier date, he is then under a heavy burden, and his proof must be clear and convincing. This proof may consist of oral testimony, if it is sufficiently probative. Such testimony should not be characterized by contradictions, inconsistencies, and indefiniteness, but should carry with it conviction of its accuracy and applicability. Moreover, oral testimony given long after the event, while entitled to consideration, should be carefully scrutinized, and, if it does not carry conviction as to its accuracy and applicability, it should not be sufficient to successfully establish a date of first use prior to that alleged in the trade-mark application. Oral testimony is obviously strengthened by corroborative documentary evidence. See B. R. Baker Co. v. Lebow Bros., 150 F.2d 580, 32 C.C.P.A., Patents, 1206, and cases cited therein; that case involved an analogous fact situation in a trade-mark interference proceeding.

The above rules should apply with particular force where, as in this case, the date on which the trade-mark application was filed (January 24, 1922) is substantially contemporaneous with the date of first use alleged therein (October 1, 1921) and an attempt is made many years later to establish an earlier date.

Also worthy of note are the cases of Auerbach & Sons v. Hall, Hayward Co.,

1904 C.D. 271, 11 O.G. 806 and the Gem Cutlery Co. v. Leach, 1905 C.D. 58, 114 O.G. 2089, wherein the Commissioner of the Patent Office held that a trade-mark registrant is not prevented from proving an earlier date of adoption and use than that alleged in his statement filed with his application, but such proof must be clear and convincing. From the commissioner's decision in the instant case, it appears that established Patent Office practice conforms to the holdings of these two cases.

Appellant contends it has established use of the mark by its predecessor from at least as early as 1907. There is insufficient probative evidence of any earlier use. Appellant introduced a letter addressed to the firm of Miller & Bingham, dated October 8, 1883, which was purportedly written by Samuel L. Clemens, deceased, in which letter Mr. Clemens granted to Miller & Bingham the right to use his pen name "Mark Twain" as a trade-mark for collars. The authenticity of that letter, however, has not been established, and there is no evidence that Miller & Bingham ever used the trade-mark "Mark Twain" under the right purportedly granted in it.

Appellant introduced the testimony of three witnesses in its attempt to establish use of the involved mark prior to October 1, 1921. One of the witnesses testified that he had been employed by appellant's predecessor Hall, Hartwell & Co. in 1907 as a cutter and continued in this employment for about 25 years; that at the time he went to work there in 1907 Hall, Hartwell & Co. were making collars bearing the trade-mark "Mark Train"; that, to the best of his belief, collars were made bearing the trade-mark "Mark Twain" up to the time he went to cutting shirts in about 1923; and that, to the best of his recollection, Hall, Hartwell & Co. were making shirts under the trade-mark "Mark Twain" as early as 1910.

Another witness testified that he went to work for Hall, Hartwell & Co. about 1910 or 1911; that in 1911 he was foreman of the collar cutting room; that Hall, Hartwell & Co. were manufacturing and selling a collar under the trade-mark "Mark Twain" in 1911 and continued to do so un--

til 1937; that the company started to manufacture shirts under the Mark Twain trade-mark about 1920 or 1921 and that, to the best of his knowledge, it continued to do so until his employment was terminated in 1937. This witness produced a "Mark Twain" collar manufactured by Hall, Hartwell & Co. in about 1937. His attention was called to certain markings on the collar and he was asked if collars were always marked in that manner during the entire time of his employment. He answered that he could not say.

Another witness testified that he went to work for Hall, Hartwell & Co. in September 1919 "as office boy—aproximately"; that he did odd jobs and ran errands; and that in 1920 Hall, Hartwell & Co. were manufacturing and selling collars bearing the trade-mark "Mark Twain."

There is a contradiction in the testimony of appellant's witnesses. One witness testified that Hall, Hartwell & Co. were making shirts under the trade-mark "Mark Twain" as early as 1910, while another witness testified that Hall, Hartwell & Co. started to manufacture shirts under the trade-mark "Mark Twain" about 1920 or 1921.

The testimony shows Hall, Hartwell & Co. carried on an extensive business and sold collars on a large scale. However, there is no evidence of any advertising or of sales of any product to any particular customers, nor is there any evidence which would indicate use of the trade-mark "Mark Twain" on collars prior to October 1, 1921, except the oral testimony of the three witnesses aforementioned. The only specimen produced showing use of the mark was the above-mentioned collar which was manufactured in 1937.

We agree with the following statement of the commissioner: " * * * Nor while the testimony of the witnesses is positive as to use of the mark at the time of their employment do they display any similar knowledge as to the activities of the company which would appear equally within their knowledge, such, for example, as the date of beginning the manufacture of shirts, the use of other trade-marks, etc."

It was the opinion of the commissioner that the testimony of these three witnesses is not clear and convincing as required by the cases above cited.

■ Mr. McKay, who had been a member of the firm for many years, verified the application for registration No. 168,075, which was filed in the Patent Office on January 24, 1922, by Hall, Hartwell & Co., and in the application stated that the mark had been used since about October 1, 1921. It will be seen that this application was made within a few months of the date set out in the application as the first date of use, and was made by a member of the firm who certainly should have knowledge of the date of first use far greater than any of the witnesses produced. When such an affidavit has been made at about the time of the event, a greater burden of proof should be, and is, required in order to carry the date of use back to a prior date.

Appellant's witnesses testified from memory. Their testimony was given in 1947, which was from ten to fourteen years after they had had any connection with Hall, Hartwell & Co. and concerned matters which occurred beginning, respectively, in 1907, 1911, and 1919.

■ We are of the opinion that the evidence of use of the mark by appellant's predecessor, Hall, Hartwell & Co., prior to October 1, 1921, is neither clear nor convincing and that not only lapse of time but all the circumstances discussed above indicate the likelihood that the recollection of the witnesses may be faulty. Hence, appellant's testimony is not sufficient to overcome the date of first use alleged in the application for registration No. 168,075.

Therefore, we hold that appellee has proven use of the mark at least as early as January 1, 1921, and that appellant has not proven use of the mark prior to October 1, 1921.

For the reasons stated, the decision of the commisioner is affirmed.

Affirmed.

GARRETT, C. J., did not participate in the consideration or decision of this case.