**STANSPEC CO., Appellant,**

v.

**AMERICAN CHAIN & CABLE COMPANY, INC., Appellee.**

**Patent Appeal No. 76–509.**

United States Court of Customs and Patent Appeals.

April 8, 1976.

Bruce B. Krost, Cleveland, Ohio (Woodling, Krost, Granger & Rust, Cleveland,

Ohio) Richard A. Collier, Cleveland, Ohio (Burke, Haber & Berick, Cleveland, Ohio), attorneys of record for appellant.

Pennie & Edmonds, New York City, attorney of record, for appellee. Hubert G. Moore, Jr., George F. Long, III, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board [1] (hereinafter TTAB), granting the motion of American Chain & Cable Company, Inc. (hereinafter American), to dismiss the appellant's (Stanspec Co., hereinafter Stanspec) petition for cancellation. We reverse and remand.

## Background

On November 1, 1963, American filed an application to register the mark WRIGHT-WAY for use on "chain hoists, trolleys and hand cranes." This application alleged a date of first use of September 13, 1963. The registration was granted on August 11, 1964.[2] On September 24, 1969, a combined affidavit under sections 8 and 15 of the Lanham Act was filed. This was accepted under section 8(c).

On August 1, 1972, Stanspec filed an application to register the mark RIGHTWAY as applied to "electric, air, hydraulic and diesel powered hoists and winches." This application asserted a date of first use of June, 1959. The registration was granted on June 24, 1975.[3]

On October 15, 1973, more than four years after its right to use the mark had become "incontestable," American filed a request for a certificate of correction under section 7(g) of the Lanham Act. This request stated that the September 13, 1963, date of first use alleged in the original application was incorrect, that a mistake had occurred in good faith, and that the correct date of first use was 1939 for chain hoists and 1951 for trolleys.

On that same day (October 15, 1973), American filed a notice of opposition [4] against Stanspec's application to register the mark RIGHTWAY. The opposition was based upon American's use of the marks WRIGHT-WAY, WRIGHT HOIST,[5] and WRIGHT [6] on similar goods. The opposition was dismissed with prejudice on December 18, 1974.

On February 11, 1974, Stanspec filed a petition to cancel [7] American's WRIGHT-WAY registration as modified by the certificate of correction.[8] In this petition, Stanspec alleges:

1. STANSPEC is the adopter, first user and owner of the trademark RIGHT-WAY for Electric, Air, Hydraulic and Diesel Powered Hoists and Winches.

\* \* \* \* \* \*

12. From 1950 to September, 1963, AMERICAN made no use of WRIGHT-WAY on hoists. AMERICAN's rights, if any, to WRIGHT-WAY for hoists were lost through abandonment in 1950. AMERICAN's present rights, if any, to WRIGHT–WAY for hoists commenced to accrue in September, 1963.

13. From 1955 to September 1963 AMERICAN made no use of WRIGHT-WAY on *anything* (having allegedly used it on trolleys from 1951 to approximately 1955). AMERICAN's rights, if any, to

---

1. 186 USPQ 205 (TTAB 1975).

2. Registration No. 774,929.

3. Registration No. 1,014,369.

4. Opposition No. 54,928.

5. Registration No. 646,780, for "chain hoists, trolleys, and hand cranes," registered June 11, 1957.

6. Registration No. 790,317, for "chain hoists, trolleys, and hand cranes," registered June 1, 1965.

7. Cancellation No. 10,550.

8. The certificate of correction issued on January 1, 1974.

WRIGHT-WAY for trolleys were lost through abandonment in 1955. AMERICAN's present rights, if any, to WRIGHT-WAY for trolleys commenced to accrue in September, 1963.

14. Said Certificate of Correction was erroneously and illegally issued and is invalid.

15. Said registration No. 774,929 as modified by said Certificate of Correction is invalid, and is not entitled to maintenance on the Register of Trademarks.

16. AMERICAN has alleged in said Opposition that STANSPEC's trademark RIGHTWAY is confusingly similar to AMERICAN's registered mark WRIGHT-WAY; has alleged that the parties' goods are closely related; has alleged that AMERICAN has used WRIGHT-WAY on hand chain hoists since at least 1939; and has asserted and relied upon said registration No. 774,929 as so modified to allege 1939 as the date of first use of WRIGHT-WAY for Chain Hoists, Trolleys and Hand Cranes.

17. STANSPEC is the first user, has continued to use, and by reason of its first and continuous use of RIGHTWAY for its products, is the owner of said trademark RIGHTWAY for Electric, Air, Hydraulic and Diesel Powered Hoists and Winches.

18. If there is a legal conflict between STANSPEC's trademark rights in respect to RIGHTWAY for Electric, Air, Hydraulic and Diesel Powered Hoists and Winches, and AMERICAN's trademark rights, if any, in respect to WRIGHT-WAY for Chain Hoists, Trolleys and Hand Cranes, as contended by AMERICAN in said Opposition No. 54,928, then STANSPEC being at present the senior continuous user and legal owner of its trademark RIGHTWAY, is injured and damaged by the continuance on the Register of said registration No. 774,929 as modified by said Certificate of Correction. [Emphasis in original.]

American moved to dismiss the petition under rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter FRCP) on the ground that the petition fails to state a claim upon which relief can be granted.

### Decision of the Trademark Trial and Appeal Board

The TTAB granted American's motion on the ground that Stanspec's pleadings failed to "set forth any of the grounds specified in Section 14(c) of the Act of 1946 upon which a claim of damage may properly be based." The TTAB further stated that since American's registration was more than five years old, it could be cancelled only on the grounds specified in section 14(c) of the Act, namely abandonment of the mark, fraudulent obtaining of the registration or other grounds not relevant here. The board dismissed Stanspec's petition for cancellation stating:

Although petitioner [Stanspec] has maintained that respondent [American] abandoned its registered mark by virtue of nonuse thereof during the period 1955 to September, 1963, there appears to be no dispute that respondent has used its mark uninterruptedly since September 13, 1963. Such use, in and of itself, effectively refutes any contention raised by petitioner that respondent has abandoned its registered mark.

In the light of the foregoing, petitioner's assertion that it has accrued intervening prior or superior rights is an insufficient basis for cancellation of respondent's registration under Section 14(c) of the Act.

[C]ontrary to petitioner's contention, the amendment of respondent's registration under Section 7(g) to assert earlier use dates cannot serve to invalidate said registration. This stems from the fact that respondent, even in the absence of any testimony relative to its use of the registered mark, can rely upon the filing date of the application which matured into the subject registration as its date of first use. See: J. C. *Hall Company v. Hallmark Cards Incorporated* [340 F.2d 960, 52 CCPA 981], 144 USPQ 435 (CCPA 1965). Furthermore, to the extent that petitioner's pleadings may be construed

as including an allegation of fraud on the ground of misstatement of use dates by respondent, the law is clear and well-settled that a misstatement of a date of first use in a registration cannot, in and of itself, afford a basis for the cancellation thereof. It should be noted, moreover, that there are no allegations made by the petitioner to the effect that it is actually informed of any acts or statements by respondent in connection with the amendment of its registration which evidence bad faith or fraudulent intent or purpose. See: *Philco Corporation v. Clary Corporation*, 123 USPQ 420 (TT&A Bd., 1959) and cases cited therein.

### Opinion

■ At the outset, we note that we agree with Stanspec that in reviewing the dismissal of the petition for cancellation under rule 12(b)(6) of the FRCP, we must assume that the facts alleged in the petition are true.

The motion to dismiss under Rule 12(b)(6) performs substantially the same function as the old common law general demurrer. * * * For the purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted * * *. [2A J. Moore, *Federal Practice* ¶ 12.08, at 2265–67 (2d ed. 1968).]

Furthermore, the petition for cancellation should not be dismissed for insufficiency unless it appears to a certainty that Stanspec is entitled to no relief under *any* state of facts which could be proved in support of the claim. *Id.* at 2271–74.

We also note that American's registration, had it been unmodified, would be more than five years old and American's right to use the mark would be incontestable under section 15, *i. e.,* the registration could be cancelled only on the grounds specified in section 14(c) of the Lanham Act. Stanspec, however, appears to be attempting not to cancel the unmodified registration (since the unmodified registration no longer exists), but rather to restrict [9] the modified registration.

■ We believe that American's registration of the mark may be subject to attack under § 14 and that such attack is not limited to § 14(c) grounds to the extent that the modification of the registration has in any way enlarged American's rights. As will be indicated hereinbelow, we believe that changing the alleged date of first use in the registration to an earlier date does enlarge the registrant's rights. Thus, the modified registration, not having been in existence for five years, may be challenged in a cancellation proceeding as long as petitioner states grounds (not limited to § 14(c) grounds) for the cancellation indicating how he believes he is or will be damaged by the modified registration.

Stanspec has stated in its petition the following grounds for cancellation:

1. STANSPEC is the adopter, first user and owner of the trademark RIGHT-WAY for Electric, Air, Hydraulic and Diesel Powered Hoists and Winches.

\* \* \* \* \* \*

16. AMERICAN has alleged in said Opposition that STANSPEC's trademark RIGHTWAY is confusingly similar to AMERICAN's registered mark WRIGHT-WAY; has alleged that the parties' goods are closely related; has

---

9. The Commissioner has authority to cancel or *restrict* the registration of a registered mark under section 18 (15 U.S.C. § 1068) of the Lanham Act. But see *Hollowform, Inc. v. Aeh,* 515 F.2d 1174, 185 USPQ 790 (Cust. & Pat.App. 1975).

It has been stated that in an interference proceeding, the examiner of interferences may restrict the territory, manner of use, or the goods or services in a registration. D. Robert, *The New Trade-Mark Manual,* 82 (1947). In the instant case, Stanspec apparently desires the Commissioner to restrict American's registration with respect to the alleged date of first use.

It may be noted that the TTAB has restricted a registration under § 18 with respect to the goods recited therein by granting a "partial cancellation" of the registration under § 14(c) on the ground of abandonment by virtue of nonuse of the mark on certain of the goods. *United States Steel Corp. v. National Copper & Smelting Co.,* 131 USPQ 397, 398 (TTAB 1961).

alleged that AMERICAN has used WRIGHT-WAY on hand chain hoists since at least 1939; and has asserted and relied upon said registration No. 774,929 as so modified to allege 1939 as the date of first use of WRIGHT-WAY for Chain Hoists, Trolleys and Hand Cranes.

\* \* \* \* \* \*

18. If there is a legal conflict between STANSPEC's trademark rights in respect to RIGHTWAY for Electric, Air, Hydraulic and Diesel Powered Hoists and Winches, and AMERICAN's trademark ·rights, if any, in respect to WRIGHT-WAY for Chain Hoists, Trolleys and Hand Cranes, as contended by AMERICAN in said Opposition No. 54,928, then STANSPEC being at present the senior continuous user and legal owner of its trademark RIGHT-WAY, is injured and damaged by the continuance on the Register of said registration No. 774,929 as modified by said Certificate of Correction.

Paragraphs 1 and 16 allege that Stanspec is the *prior user of a mark which may be confusingly similar* to American's mark. This is one recognized ground for cancellation. See 1 J. McCarthy, *Trademarks and Unfair Competition* § 20.14, at 791 (1973) and cases cited therein. Paragraphs 1 and 16 also allege that American is not entitled to the exclusive use of the mark as alleged in the registration because of the lawful use of the same or a confusingly similar mark by Stanspec. This is another recognized ground for cancellation. See E. Vandenburgh, *Trademark Law and Procedure* § 10.31(b), at 358 (2d ed. 1968).

Stanspec must also allege facts which support a conclusion that it is likely to be damaged. Paragraph 18 of Stanspec's petition broadly indicates how Stanspec is or *will be damaged by the registration* as "corrected" with the modified date of first use.

Stanspec alleges that if there is a legal conflict between Stanspec's trademark rights and American's trademark rights, then Stanspec *is* damaged by the continuance on the register of the modified registration.

Such damage may result *solely* from the altered date of first use. "The issue in determining standing is \* \* \* whether the presumptions flowing from the registration are damaging to petitioner's legal and continuous use of that term." McCarthy, supra, § 20.13, at 788. For example, such damage may occur in future infringement litigation where the date of first use may be of paramount importance. Since the allegation of the date of first use in the application may be considered to have been made against interest at the time of filing of the application, a party may have to bear an especially heavy burden of proof to establish a date of first use prior to that alleged in his trademark application as originally filed.[10] American should not be able to lessen that burden merely by filing a certificate of correction whose contents are subject to attack only on § 14(c) grounds.

■ To the extent that American has lessened the burden of proof which it might have to meet in potential litigation, Stanspec may be damaged. Although Stanspec, in its petition, has not indicated such damage with the particularity described herein, it has broadly alleged damage which might occur in potential future litigation. Construing these allegations, as we must, most favorably to Stanspec's position, we hold that the petition for cancellation has adequately asserted grounds for cancellation including damage to petitioner. Accordingly, the decision of the TTAB granting American's motion and dismissing Stanspec's petition is *reversed* and the case is *remanded* for further proceedings.

---

**10.** It has been established in opposition and interference proceedings, for example, that one who attempts to establish a date of first use earlier than that specified in his application or registration must meet a higher standard of proof. See E. Vandenburgh, *Trademark Law and Procedure* § 10.11(d), at 296 (2d ed. 1968) and cases cited therein. For example, in an opposition proceeding, opposer was allowed to carry his date of first use back to a date prior to that alleged in his application. However, proof of the earlier date had to be "clear and convincing." *Elder Mfg. Co. v. International Shoe Co.,* 194 F.2d 114, 39 CCPA 817, 92 USPQ 330 (1952).

Finally, American's request that we vacate our order of September 25, 1975, concerning the costs of printing the supplemental transcript is denied. American has advanced no new ground for requesting reimbursement of these costs beyond those recited in its "Motion to Compel Appellant to Bear the Costs of Printing the Record."

*REVERSED AND REMANDED*